**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

VON TUCKER,

                 **Petitioner,**

    - against -

**UNITED STATES OF AMERICA**

           **Respondent.**
-----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/12

**OPINION AND ORDER**

**11 Civ. 6469  (SAS)**

**S5 05 CR 711 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Petitioner Von Tucker, incarcerated and proceeding pro se, brings this collateral attack challenging his conviction pursuant to 28 U.S.C. § 2255 ("section 2255"). After an eight-day trial, the jury found Tucker guilty of four of the five offenses with which he was charged in the fifth Superseding Indictment, S5 05 CR 711. Tucker was charged with participating in a conspiracy to distribute at least fifty grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count One"); possession with intent to distribute at least five grams of crack in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count Two"); the murder of Kenneth Scott through the discharge of a firearm, in violation of Title 18 U.S.C. § 924(j) ("Count Three"); possession of a firearm in furtherance of the crack distribution conspiracy charged in Count One, in violation of Title 18 U.S.C. § 924(c) ("Count Four"); and the intentional murder of Kenneth Scott, in

furtherance of the crack distribution conspiracy charged in Count One, in violation of Title 21 U.S.C. § 848(e)(1)(A) ("Count Five").[1]

On February 6, 2008, the jury convicted Tucker on  Counts One, Two, Four, and Five and acquitted him on Count Three.  On August 7, 2009, this Court sentenced Tucker to 480 concurrent months imprisonment, to be followed by five years of supervised release.  Tucker  appealed his judgment of conviction to the Second Circuit on a single ground – ineffective assistance of counsel at trial.[2]  The Second Circuit declined to address this claim and affirmed the Court's judgment.[3]

On September 9, 2011, Tucker filed a motion to vacate, set aside, or correct sentence pursuant to section 2255.[4]  In his accompanying Memorandum of Law in Support of 28 U.S.C. [§] 2255 ("Def. Mem."), Tucker argues that his judgment of conviction should be reversed based on the following:  (1) there was insufficient evidence to support the jury's guilty verdict; (2) he received ineffective

---

[1]     For Counts Three, Four and Five, Tucker was also charged with aiding and abetting the various substantive offenses charged in those counts, in violation of  18 U.S.C. § 2.

[2]     *See United States v. Tucker*, 393 Fed. App'x 827 (2d Cir. 2010).

[3]     *See id.* at 829 ("[Tucker's] claim that his trial counsel abused drugs cannot properly be evaluated on the record before us; all of [Tucker's] factual allegations in support of this claim are outside the record on appeal.").

[4]     *See* Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody.

assistance of counsel from his two trial attorneys; and (3) the Government committed prosecutorial misconduct by allowing one of its witnesses to commit perjury.[5]  Tucker is currently serving his sentence at the United States Penitentiary at Big Sandy.  For the following reasons, his Petition is denied.

## I.   BACKGROUND

### A.   The Offense Conduct

#### 1.   The Drug Trafficking Conspiracy

Beginning in late 2004, Shedret Whitehead and Ronald Allen successfully ran an organization that distributed crack out of an apartment located at 3355 Seymour Avenue in the Bronx.[6]  Whitehead and Allen were the leaders of the organization which sold crack twenty-four hours per day, seven days per week, thereby generating thousands of dollars in revenue every day.[7]  Tucker acted as the organization's principal "enforcer."[8]  Other members of the conspiracy included

---

[5]     "As a practical matter, courts routinely allow federal prisoners to challenge their conviction, in addition to their sentence, under § 2255(a).  For that purpose, the word 'sentence' in § 2255(a) is understood to encompass both the conviction and the sentence."  *Johnson v. United States*, 623 F.3d 41, 45 (2d Cir. 2010).

[6]     *See* Trial Transcript ("Tr.") at 120, 124, 451-453, 458.

[7]     *See id.* at 124, 453.

[8]     *See id.* at 125, 153, 453, 474-475.

Jameek Rich and Jadrien Smith, who also served as enforcers.[9]  Beatrice Jones,

Dana Curry, and Nathaniel Jones served as street-level retail sellers of crack.[10]  As

an enforcer, it was Tucker's job to protect the business from non-paying

customers, rival drug dealers, and any other threats.[11]   Of the three enforcers,

Tucker was the person looked to the most for protection because of his physical

stature, intimidating presence, and  willingness to do anything Whitehead asked of

him.[12]

### 2.      The Murder of Kenneth Scott

On the morning of May 6, 2005, Kenneth Scott robbed Whitehead's

drug organization.[13]  After gaining entry into the apartment at 3355 Seymour

Avenue, Scott drew a gun on Beatrice Jones and Curry and demanded all of the

crack and cash in the apartment.[14]   Scott then left with the crack given to him by

Beatrice Jones.[15]  Beatrice Jones immediately called Whitehead and told him that

---

[9]      *See id.* at 125-26, 453-454, 474.

[10]     *See id.* at 135-36, 454, 478.

[11]     *See id.* at 125-26, 153, 163, 168, 453-454, 474-475.

[12]     *See id.* at 153, 163, 474-475.

[13]     *See id.* at 168, 651-652.

[14]     *Se id.* at 486-487.

[15]     *See id.* at 487.

Scott robbed them.[16]   Whitehead was enraged and he immediately summoned

Tucker, Allen, Rich, and Smith (collectively, the "conspirators") to the apartment

at 3355 Seymour Avenue .[17]   Whitehead expressed his outrage over the robbery

and the fact that Scott had threatened the ongoing existence of his crack

distribution operation.[18]

During the meeting, Allen left and returned with a black handgun.[19]

Whitehead told the conspirators: "We going to kill this guy.  We going to kill

him."[20]   Whitehead then put the matter to a vote and all five conspirators voted in

favor of murdering Scott.[21]   Tucker volunteered to be Scott's executioner.[22]   When

the meeting ended, Tucker left carrying the gun in his sweatshirt.[23]

---

[16]    *See id.* at 490.

[17]    *See id.* at 172, 174-175, 491.

[18]    *See id.* at 176-177.

[19]    *See id.* at 177-178.

[20]    *Id.* at 178.

[21]    *See id.*

[22]    *See id.*

[23]    *See id.* at 178-179.

Two days later, on May 8, 2005 (Mother's Day), Tucker and Whitehead murdered Scott.[24]  After Whitehead learned of Scott's location, he and Tucker left in a light-colored van to look for Scott.[25]  A witness to the murder, Ken Matthew, testified that a tan van pulled up next to Scott on the corner of Hicks Street and Seymour Avenue.[26]  The shooter fired approximately thirteen shots at Scott from a single 9 millimeter, semiautomatic pistol.[27]  Three of the bullets hit Scott and killed him.[28]

**B.    The Trial and Jury Verdict**

Trial commenced on January 1, 2008.  At trial, defense counsel offered the following stipulation into evidence, which provided that: "Mr. Tucker was not within the confines of the City of New York at any time commencing January 2004 through March 25, 2005."[29]  This stipulation, agreed to by the Government, contradicted Matthew's testimony that he had first met Tucker in

---

[24]     *See id.* at 186, 651.

[25]     *See id.* at 188-189, 520-522.

[26]     *See id.* at 51-54, 671-673, 413, 573.

[27]     *See id.* at 775, 836-837.

[28]     *See id.* at 55, 67-71, 78, 85, 674-676.

[29]     *Id.* at 986.

New York City in the summer of 2004.[30]  On February 6, 2008, after

approximately two days of deliberations, Tucker was convicted of Counts One,

Two, Four and Five, and acquitted of Count Three.[31]

### C.    Tucker's Post-Trial Motion and Change in Counsel

Tucker was represented at trial by James LeBow and George Goltzer,

both of whom were appointed pursuant to the Criminal Justice Act.  Goltzer was

initially appointed as "learned counsel" because Tucker was eligible for the death

penalty.  Although the Government elected not to seek the death penalty, Goltzer

continued to represent Tucker at trial and thereafter.

On April 10, 2008, approximately two months after the trial ended, a

representative from LeBow's office sent a letter to the Court.[32]   The letter stated

that LeBow was "very ill," had been hospitalized, and was "undergoing treatment

in California."[33]  For these reasons, LeBow was "unable to attend to his cases for

---

[30]     *See id.* at 637, 639.

[31]     *See id.* at 1146-1147.

[32]     *See* 4/8/08 Letter from Kristina Heuser to the Court, Ex. F to the
Government's Memorandum of Law in Opposition to Von Tucker's Motion to
Vacate or Set Aside Convictions and Sentence Pursuant to 28 U.S.C. § 2255
("Gov't Mem.").

[33]     *Id.*

7

an indefinite period of time."[34]   The letter further stated that Goltzer was "prepared

to proceed on his own as sole attorney for Mr. Tucker."[35]  On August 28, 2008,

LeBow was formally relieved as Tucker's counsel.

After Lebow's removal, Goltzer continued to represent Tucker.  On

May 2, 2008, Goltzer submitted a letter motion seeking a judgment of acquittal

pursuant to Federal Rule of Criminal Procedure ("Rule") 29 as to Count Two and a

new trial pursuant to Rule 33 as to the other counts of conviction.[36]   In particular,

Tucker argued that: (1) the Court should enter a judgment of acquittal on Count

Two because the evidence was insufficient to support the jury's verdict on that

count; (2) the Court should grant him a new trial on all counts of conviction

because the jury's verdict was against the weight of the evidence; and (3) the Court

should set aside the verdicts on Counts Four and Five because the jury's verdict of

guilty as to those counts was inconsistent with its finding of not guilty as to Count

Three.  I rejected each of Tucker's arguments and denied the motion in a

Memorandum Opinion and Order dated August 13, 2008.[37]

---

[34]     *Id.*

[35]     *Id.*

[36]     *See* 5/2/08 Letter from Goltzer to the Court,  Ex. G to Gov't Mem.

[37]     *See United States v. Tucker*, No. S5 05 CR 711, 2008 WL 3538714
(S.D.N.Y. Aug. 13, 2008).

In anticipation of Tucker's sentencing, Goltzer submitted a detailed sentencing memorandum on November 15, 2008.  On November 18, 2008, Goltzer notified my Chambers that Tucker had physically assaulted him during a jail visit.  On November 24, 2008, based on a concern that Goltzer might someday be required to testify against Tucker as to the assault, I relieved Goltzer as counsel and appointed Louis Freeman in his stead.

### D.    Tucker's Ineffective Assistance of Counsel Claim

On July 20, 2009, Tucker made a second motion to vacate his conviction on the ground that LeBow rendered ineffective assistance of counsel at trial.[38]  Tucker moved, in the alternative, for a hearing on this issue.[39]  At a conference held on July 23, 2009, I met with the parties to discuss whether sentencing should be delayed further to address Tucker's ineffective assistance of counsel claim.[40]  During the conference, I advised defense counsel that Tucker's ineffective assistance claim should be raised through a section 2255 motion rather than a Rule 33 motion, which would have been untimely.[41]  Defense counsel

---

[38]    *See* 7/20/09 letter motion from Freeman, Ex. D to the Gov't Mem.

[39]    *See id.*

[40]    *See* Transcript of July 23, 2009 conference, Ex. E to the Gov't Mem.

[41]    *See id.* at 2.

stated that the section 2255 route was acceptable to Tucker.[42]  With regard to the

merits of such a motion, I doubted whether Tucker would be able to establish

prejudice from any alleged ineffectiveness on the part of LeBow because he had

been ably represented throughout the trial by Goltzer.[43]  I was also skeptical

whether prejudice could be presumed on the ground that LeBow's conduct was so

egregious that it infected the entire trial proceeding.[44]  Defense counsel

acknowledged that Goltzer took over a large percentage of the trial.[45]

E.    **Tucker's Direct Appeal**

Represented by Freeman on appeal, Tucker appealed his conviction

and sentence to the Second Circuit.  The sole issue raised on appeal was Lebow's

alleged ineffective assistance of counsel.[46]  Tucker argued that there was an "actual

conflict of interest" because his trial counsel used drugs while representing him.[47]

---

[42]    *See id.* at 3 ("As I said, it really is of no matter because we do agree
that the 2255 route is acceptable.").

[43]    *See id.*(stating that throughout the trial, Tucker was represented by
Goltzer who "clearly was not [in]effective.").

[44]    *See id.* at 5 ("But because a fully competent counsel was there
throughout, the beginning to the end, and, in fact, did much of the trial work, I just
don't know how you could do this without finding actual prejudice.").

[45]    *See id.*

[46]    *See Tucker*, 393 Fed. App'x at 828.

[47]    *Id.*

Tucker further argued that "his trial counsel committed at least five separate errors that prejudiced the outcome of his trial."[48]  On September 24, 2010, the Second Circuit issued a Summary Order affirming the judgment of conviction.   The Second Circuit refused to rule on Tucker's ineffective assistance claim. Expressing a "baseline aversion" to deciding such claims on direct review, the Second Circuit stated as follows:

> Here, [defendant's] claim that his trial counsel abused drugs cannot properly be evaluated on the record before us; all of [defendant's] factual allegations in support of this claim are outside the record on appeal. [Defendant's] additional claims, the majority of which allege a failure by his trial counsel to interview and/or call as defense witnesses certain persons identified by [defendant] in preparation of trial, are similarly incapable of resolution. The trial record does not reflect these alleged errors of omission, and their potential effect (or lack thereof) on the trial outcome is speculative. . . .  We therefore decline to adjudicate [defendant's] ineffective assistance claim at this time.[49]

### F.   Tucker's Section 2255 Motion

Tucker brings three claims in his section 2255 motion: (1) insufficiency of the evidence; (2) prosecutorial misconduct; and (3) ineffective assistance of counsel.  Tucker argues that the weight of the evidence was

---

[48]   *Id.*

[49]   *Id.* at 829.

insufficient to sustain a conviction for the offenses charged in Counts One, Two, Four and Five.  The gravamen of this claim is as follows:

> The core basis of the government's case from inconsist[e]nt hearsay testimony; given by drug addicts; criminals; a sole identification witness who[] was avoiding immigration charges and that committed perjury; and co-defendants, who would have said anything to save themselves or to obtain shorter sentences, which in light of the totality of circumstances make their testimonies less credible, mainly because it was inconsist[e]nt hearsay that was never corroborated.[50]

In support of his prosecutorial misconduct claim, Tucker alleges that the Government knowingly allowed Matthew to perjure himself when he testified that he saw Tucker in New York in 2004, despite Tucker's incarceration during that period.[51]

Tucker resurrects his ineffective assistance of counsel claim but this time he accuses both LeBow and Goltzer of providing constitutionally inadequate counsel.  In addition to once again raising the claim that Lebow used drugs during the trial, Tucker cites the following ten errors that were allegedly committed by Lebow and/or Goltzer:

---

[50]    Def. Mem. at 4-5.

[51]    *See id.* at 14.

1.      The failure to interview Orlando Collie, who was arrested with the suspected murder weapon, and consider calling him as a defense witness.

2.      The failure to interview Beatrice Jones and obtain letters allegedly written by Curry which encouraged Beatrice Jones to cooperate even if it meant lying.

3.      The failure to interview Whitehead and subpoena him as a defense witness to provide exculpatory testimony and discredit several of the Government's witnesses.

4.      The failure to interview Lillian Burns, Tucker's girlfriend, to determine whether she was incarcerated or if she could be called as a possible defense witness to discredit several of the Government's witnesses.

5.      The failure to recall/cross-examine Detective Grant regarding the timing, content and motivation of Nathaniel Jones's initial statement about Scott's murder.

6.      The failure to obtain a stipulation providing that Tucker was not within the confines of New York City from March 30, 1999 – March 25, 2005, as opposed to the actual stipulation which stated that Tucker was not in New York City from January 1, 2004 – March 25, 2005.

7.      The failure to highlight in summation that all of the Government's witnesses heard four or five shots on the day of Scott's murder while ballistics evidence revealed that thirteen shots were fired given that thirteen shell casings were at the scene.

8.      The failure to object to the jury instruction regarding the section 924(c) firearm offense   (Count Four - possession of a firearm in connection with a drug distribution conspiracy).

9.     The failure to argue that the Government had not proven, beyond a reasonable doubt, that Scott's killing was the result of acts taken by Tucker.

10.     The failure to object to Matthew's allegedly perjurious testimony that he met Tucker in the summer of 2004, a time when Tucker was incarcerated within the New York State Department of Corrections (from March 1999 through March 2005).[52]

## II.     LEGAL STANDARDS

### A.     Section 2255

Section 2255 permits a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence.  A properly filed motion under Section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[53]  Accordingly, collateral relief under Section 2255 is permitted "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete

---

[52]     *See id.* at 10-13.

[53]     *See* 28 U.S.C. § 2255.

miscarriage of justice.'"[54]

## B.    Procedural Bar

It is well-settled that federal prisoners may not employ Section 2255 as a substitute for direct appeal.[55]  "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence."[56] Furthermore, to the extent that a habeas petitioner brings claims that were litigated on direct appeal, the petitioner is procedurally barred from raising such claims again in a Section 2255 proceeding.[57]   "The procedural-default rule is neither a

---

[54]    *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[55]    *See, e.g., Wall v. United States*, 619 F.3d 152, 154 (2d Cir. 2010); *United States v. Frady*, 456 U.S. 152, 165 (1982).

[56]    *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998).  *Accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) ("A second rule that applies in the Section 2255 context prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice.").

[57]    *See, e.g., Yick Man Mui*, 614 F.3d at 53 (stating that "the so-called mandate rule bars re-litigation of issues already decided on direct appeal"); *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (per curiam) ("It is well-established that a § 2255 petition cannot be used to 'relitigate [issues] which were raised and considered on direct appeal.'") (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.

statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[58]

Under the "cause and prejudice" standard, the petitioner bears the burden of showing "cause for failing to raise [the claim on direct appeal] and prejudice therefrom."[59]  The Supreme Court has emphasized that "cause" is measured by a stringent standard of diligence.[60]  Thus, "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."[61]  Furthermore, the prejudice prong requires far more than the demonstration of a "possibility of prejudice."[62]  Instead, the prejudice must work to the defendant's "actual and substantial disadvantage, infecting [the] entire trial

---

1992)).

[58]     *Massaro v. United States*, 538 U.S. 500, 504 (2003) (carving out an exception for ineffective assistance of counsel claims "which may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").

[59]     *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

[60]     *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (stating that "cause" is "something external to the petitioner" that "cannot be fairly attributed to him").

[61]     *McCleskey*, 499 U.S. at 494.  *Accord Coleman*, 501 U.S. at 753-54.

[62]     *Frady*, 456 U.S. at 170.

with error of constitutional dimensions."[63]  Finally, "prisoners asserting [actual] innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"[64]

### C.   Ineffective Assistance of Counsel

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[65]

When analyzing a claim that counsel's performance did not meet constitutional standards, "judicial scrutiny of counsel's performance must be highly deferential."[66]  The court "must indulge a strong presumption that counsel's

---

[63]   *Id.*

[64]   *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

[65]   *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984).

[66]   *Id.* at 689.

conduct falls within the wide range of reasonable professional assistance."[67]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[68] Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[69]  Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a][p]etitioner [i]s entitled."[70]  Finally, even if an attorney's performance was objectively unreasonable and unprofessional, a petitioner must still prove prejudice.[71]  As explained by the Supreme Court, the order of analysis of the two *Strickland* prongs is at the discretion of the court:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective

---

[67]     *Id.*

[68]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[69]     *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

[70]     *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

[71]     *See Stickland*, 466 U.S. at 687.

assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[72]

## III.   DISCUSSION

### A.   Sufficiency of the Evidence Claim

Tucker argues that his conviction should be vacated on the ground that the jury's guilty verdict on Counts One, Two, Four, and Five was not supported by sufficient evidence.[73]   Tucker previously raised the same attack in his post-trial motion for a judgment of acquittal on Count Two, pursuant to Rule 29, and for a new trial on all counts of conviction, pursuant to Rule 33. Following the

---

[72]   *Id.* at 697. *See also id.* at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense. . . [and] there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). *Accord Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

[73]   *See* Def. Mem. at 4-9.

denial of that motion, Tucker failed to raise any sufficiency of the evidence

arguments on direct appeal.  Indeed, the Second Circuit specifically noted that

Tucker's "*sole* argument on appeal is that he received ineffective assistance of

counsel at trial."[74]

Because Tucker indisputably failed to raise any sufficiency claims on

direct appeal, those claims are now procedurally barred.[75]  Tucker does not and

cannot assert a valid cause for not raising such claims on direct review.[76]  Given

Tucker's post-trial motion, in which he raised virtually identical arguments

attacking the Government's evidence, he cannot credibly argue that he should be

excused from failing to raise any sufficiency claims on direct appeal.  Tucker

likewise cannot demonstrate any prejudice resulting from his procedural default

---

[74]      *Tucker*, 393 Fed. App'x at 828 (emphasis added).

[75]      *See, e.g., United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998)
("[A]bsent a showing of cause for, and prejudice resulting from, the failure to raise
this claim, Munoz may not now challenge the sufficiency of the evidence by
collateral attack.");  *Gerbacio-Linch v. United States*, No. 00 CR 1123, 04 Civ.
9674, 2006 WL 2109434, at *5 (S.D.N.Y. July 28, 2006) (denying section 2255
motion where petitioner "offers no explanation for his failure to raise on appeal his
claim of insufficient evidence").

[76]      *See, e.g., Matista v. United States*, 885 F. Supp. 634, 643 (S.D.N.Y.
1995) (denying § 2255 motion where "not only did petitioner fail to raise the
sufficiency-of-evidence argument on appeal, but petitioner's memorandum of law
in support of his § 2255 motion entirely fails to mention either cause or
prejudice").

because his insufficient evidence arguments are without merit.[77]  Finally, in light of the overwhelming evidence of Tucker's guilt, he does not even approach demonstrating that he should be excused from the procedural bar based on "actual innocence."[78]  Accordingly, Tucker's insufficient evidence claims are dismissed.

**B.      Prosecutorial Misconduct**

As noted above, the only claim that Tucker raised on direct appeal was ineffective assistance of counsel.  Accordingly, he is procedurally barred from raising his claim of prosecutorial misconduct on collateral review.[79]  Tucker does not, and cannot, claim any reason for his failure to raise the claim on appeal.  In fact, Tucker's argument is based on inaccurate testimony from Matthew that was fully aired during the trial.  Indeed, the Government entered into a stipulation with defense counsel at trial that undermined Matthew's testimony that he met Tucker

---

[77]      *See Tucker*, 2008 WL 3538714, at *3 (stating that "the Government introduced substantial evidence of the existence of a narcotics distribution organization at 3355 Seymour Avenue and of Tucker's participation in the activities of the organization").

[78]      *See House*, 547 U.S. at 538 (The "actual innocence" standard is "demanding and permits review only in the extraordinary case.").

[79]      *See, e.g., Abad v. United States*, No. 09 Civ. 8985, 2011 WL 666361, at *2 (S.D.N.Y. Feb. 7, 2011) ("Petitioner's prosecutorial misconduct claims are also procedurally barred due to Petitioner's failure to raise those claims on direct appeal and his failure to show cause and actual prejudice in light of such an alleged failure.");  *Stukes v. United States*, 566 F. Supp. 2d 235, 243 (S.D.N.Y. 2008) (same).

in New York City during the summer of 2004.  Defense counsel also devoted a

significant portion of his summation to attacking Matthew's credibility.  Tucker

nevertheless failed to argue on direct appeal that the Government committed

prosecutorial misconduct by knowingly eliciting perjured testimony from Matthew.

Nor can Tucker demonstrate any prejudice from his failure to preserve this claim

given that, at trial, his attorney impeached the testimony in issue and vigorously

attacked Matthew's credibility during his closing argument.  For these reasons,

Tucker's prosecutorial misconduct claim is dismissed.

### C.    Ineffective Assistance of Counsel

#### 1.    Conclusory Allegations Relating to Claims One Through Four

The first four errors claimed by Tucker relate to uncalled witnesses

who should have been interviewed and/or called at trial by his counsel.  These

claims were also raised by Tucker on direct appeal and the Second Circuit declined

to address them because the claims were "outside the record on appeal" and

"incapable of resolution."[80]  These four ineffective assistance claims must be

rejected because Tucker has failed to introduce any evidence showing: (1) whether

he actually asked his counsel to interview and/or call the individuals as defense

witnesses; (2) whether the witnesses would have testified or invoked their Fifth

---

[80]      *Tucker*, 393 Fed. App'x at 829.

Amendment privilege against self-incrimination; and (3) whether the witnesses would have provided any exculpatory or impeachment testimony that would have helped the defense.[81]   Taking each claim in turn, Tucker has failed to demonstrate any errors committed in not calling these witnesses:

> 1.     Tucker does not establish ineffectiveness from the alleged failure to interview and call Collie as a defense witness.  This witness was alleged to have purchased a weapon from Nathaniel Jones who claimed it was the murder weapon, which it was not.[82]  Tucker asserts that Collie's testimony would have strongly undermined Nathaniel Jones's testimony that he sold the murder weapon to Collie.  But Tucker was able to make that argument forcefully at trial, even without Collie's testimony, because the evidence showed that Collie had been arrested three days after the murder in possession of a 9 millimeter handgun that was not the weapon used to murder Scott.[83]  Indeed, defense counsel spent a significant portion of his summation discussing this fact and how it

---

[81]     *See United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (finding that petitioner's affidavit, featuring allegations made in a "conclusory fashion," failed to demonstrate ineffective assistance of counsel based on uncalled witness); *Muhammad v. Bennett*, No. 96 Civ. 8430, 1998 WL 214884, at *1 (S.D.N.Y. Apr. 29, 1998) (finding "petitioner's speculative claim about the testimony of an uncalled witness" to be insufficient); *Carneglia v. United States*, No. 03 Civ. 6388, 2006 WL 148908, at *4 (E.D.N.Y. Jan.18, 2006) (rejecting challenge because "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them").

[82]     *See* Def. Mem. at 10.

[83]     *See* Tr. at 838-839.

23

proved that Nathaniel Jones was lying.[84]   Because calling Collie to testify could have provided only a marginal benefit to Tucker, at most, the failure to call him as a witness was not prejudicial.

2.      Similarly, Tucker cannot establish ineffective assistance from the alleged failure to interview and call Beatrice Jones as a defense witness because he cannot show the requisite prejudice.  Beatrice Jones was the victim of the robbery that instigated Scott's murder and she was also present when Whitehead described Tucker's role in Scott's murder.  Thus, Beatrice Jones's testimony would have been hurtful, not helpful, to Tucker.  Tucker alludes to letters that Curry, who testified as a Government witness at trial, allegedly sent Beatrice Jones in which he encouraged her to cooperate "even if it meant her lying."[85]  Tucker thus claims that Beatrice Jones could have impeached Curry. However, there is no evidence that such letters actually existed and, hence, no prejudice to Tucker.

3.      Tucker cannot establish ineffectiveness from the alleged failure to interview and call Whitehead as a defense witness because his testimony would have only harmed Tucker's case, not helped it.   Whitehead was a critical participant in both the crack-distribution conspiracy and the Scott murder.  His testimony would have been devastating evidence against Tucker.   Indeed, as part of his own sentencing submission to the Court, Whitehead submitted a statement implicating Tucker in the murder.  Specifically, apologizing for his role in the murder, Whitehead stated: "Your Honor, I cannot say how often I think about how I only wish that I had not given in to the pressure of driving that car on that day knowing that my co-defendant [Tucker]

---

[84]     *See id.* at 977-978.

[85]     Def. Mem. at 11.

was carrying a firearm."[86]  Accordingly, any decision not to call Whitehead as a defense witness cannot be said to have fallen below prevailing professional norms.   Nor can it be said that such decision caused Tucker prejudice, as Whitehead's testimony certainly would have been incriminating.

4.     Tucker cannot establish ineffectiveness from the alleged failure to interview and call Burns as a defense witness because he cannot show the requisite prejudice. Tucker makes the conclusory assertion that Burns would have testified that "Tucker did not belong in this conspiracy; he never possessed any drugs and was innocent in this case."[87]   To the contrary, Burns' testimony would have likely harmed Tucker because she was part of the drug conspiracy.   Burns was the person whom Tucker most frequently called and with whom he was romantically involved.[88]  If anything, Burns' testimony would have linked Tucker even further with the crack dealing and violence committed by the 3355 Seymour Avenue crew. As with the other potential witnesses identified, Tucker cannot point to any error or prejudice by his counsel's alleged failure to follow his instructions and call Burns as a defense witness.

**2.     Alleged Counsel Errors Five Through Ten Are Without Merit**

In addition to failing to interview and call the aforementioned individuals, Tucker lists the following six additional errors allegedly committed by

---

[86]     4/21/08 Letter to the Court, Ex. M to the Gov't Mem., at 2.

[87]      Def. Mem. at 11.

[88]     *See* Tr. at 885-887.

his counsel:

> 5.     Tucker's fifth claim alleges that his counsel failed to ask Detective Grant when Nathaniel Jones told him about Scott's murder and whether Jones told him that Tucker confessed to Scott's murder.  Tucker also asserts that his counsel failed to confront Detective Grant with Tucker's claim that Jones told law enforcement about the murder only after he had been arrested 0"in a drug raid."  Upon Detective Grant's cross-examination, Tucker's counsel established that Jones told Detective Grant about Scott's murder on June 21, 2005.[89]  This testimony was consistent with Nathaniel Jones's testimony that he was interviewed by Detective Grant in June 2005.[90]  Tucker's claim that his counsel somehow committed error by not eliciting this fact through Grant's testimony is therefore meritless.  In addition, Tucker's assertion that his counsel should have asked Detective Grant whether Jones told him that Tucker had confessed to Scott's murder would have hurt Tucker, rather than helped him, because it would have opened the door to Nathaniel's out-of-court statement implicating Tucker in Scott's murder.[91]  Finally, both Nathaniel Jones and Detective Grant testified that Jones's interaction with the New York Police Department ("NYPD") about Scott's murder took place after the NYPD went to 3355 Seymour Avenue to interview Burns about the murder.  There is no evidence that Jones told the NYPD about Scott's murder after being arrested in a "drug raid."  Tucker has therefore failed to identify any error or prejudice resulting from his

---

[89]     *See id.* at 352.

[90]     *See id.* at 211.

[91]     *See* 6/21/05 Statement from Nathaniel Jones, Ex. N to the Gov't Mem.

counsel's strategy in cross-examining Detective Grant.[92]

6.     Tucker's claim that his counsel failed to follow his instructions to obtain a stipulation stating that Tucker was not in New York City from March 30, 1999 – March 25, 2005, as opposed to January 1, 2004 – March 25, 2005, is without merit.  The point of the stipulation was to impeach Matthew's testimony that he had seen Tucker in New York during the summer of 2004.  Thus, the actual stipulation executed by the parties – stating that Tucker was not in New York between January 1, 2004 – March 25, 2005 – was more than sufficient to achieve that objective. Moreover, January 1, 2004 was a significant date because it was the start date of the charged conspiracy.  It would have been confusing to the jury, and arguably prejudicial to Tucker, to have the stipulation extend prior to that date. Thus, there was neither error nor prejudice from trial counsel's decision to use January 1, 2004, as opposed to March 30, 1999, as the beginning date of Tucker's stipulated absence from New York.

7.     Tucker's seventh claim – that his counsel committed prejudicial error by not highlighting in summation that all of the Government's witnesses heard four or five shots on the day of Scott's murder, while the police collected thirteen shell casings from the crime scene, warrants little discussion.  There is no dispute that Kenneth Scott was killed on Mother's Day 2005, in the vicinity of Seymour Avenue and Hicks Street.  The fact that the Government's

---

[92]     *See United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (no ineffective assistance claim despite defendant's assertion that his lawyer failed to thoroughly impeach prosecution witnesses because decisions as to the nature and extent of cross-examination are strategic); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and do not support an ineffective assistance claim).

witnesses within earshot of the shooting heard four or five shots even though a total of thirteen bullets were fired is immaterial. The obvious explanation is that the witnesses either heard only some of the bullets fired or they were only able to perceive/recall the sound of four or five of several shots fired in rapid succession. There would have been no benefit to Tucker if his defense counsel argued this point during his summation. In any event, the focus of an attorney's summation is a quintessential strategic decision that cannot support an ineffective-assistance-of-counsel claim.[93]

8.    The eighth alleged error by defense counsel identified by Tucker is his counsel's failure to object to the section 924(c) instruction given to the jury. Tucker's claim that he "was only charged with [that] Section of 924(c) which prohibits discharge of firearm" is nonsensical. Section 924(c) criminalizes using or carrying a firearm in relation to a crime of violence or drug trafficking crime and possessing a firearm in furtherance of such crimes. Here, Tucker was specifically charged in Count Four of the Indictment with possessing and aiding and abetting the possession of the firearm that was discharged during the murder of Scott. Thus, there was no legal basis for Tucker's counsel to object to the Court's section 924(c) jury charge. Tucker's counsel did not commit any error, let alone prejudicial error, in failing to make this frivolous objection.

9.    Tucker's ninth claim is that his counsel failed to argue that the Government had not proved beyond a reasonable doubt that Scott's killing resulted from Tucker's

---

[93]    *See, e.g., United States v. Walker*, 24 Fed. App'x 57, 60 (2d Cir. 2001) ("In light of the overwhelming government proof, trial counsel's strategic decision to try to maintain credibility with the jury could hardly be considered ineffective assistance of counsel.").

acts.[94]  Contrary to Tucker's assertion, the centerpiece of
his counsel's closing argument was that the Government
failed to connect Tucker to the murder.  For example,
Goltzer asserted the following in his summation:

- "That man, [Von Tucker,] . . . didn't help anybody or
counsel anybody or aid anybody or abet anybody in that
terrible, terrible murder."[95]

- "There is not one observation by a police officer of
Von Tucker doing anything wrong.  There is not one
recording of Von Tucker doing anything wrong."[96]

- "[O]n May the 8th 2005, expert crime scene
detectives who were objective went to that crime scene and
they found not one shred of physical evidence to tie Von
Tucker to that crime.  The physical evidence in the case
distances him from that crime, distances him from all of the
crimes charged in this particular indictment."[97]

- "There is no neutral, independent eyewitness[] . . .
who places him near the scene of the crime on Hicks Street
on May the 8th, 200[5].  The only witness who tries to
place him at that scene on Hicks Street is Ken Matthew, for
whom you should have nothing but contempt."[98]

In light of the above record, Tucker's argument that his
counsel did not object to the Government's alleged failure
to connect him to Scott's murder is rejected.

---

[94]     *See* Def. Mem. at 13.

[95]     Tr. at 969.

[96]     *Id.* at 986.

[97]     *Id.* at 988.

[98]     *Id.* at 989.

10.    Finally, Tucker claims that his counsel failed to object to the supposedly perjurious testimony by Matthew stating that he saw Tucker in New York in 2004, at a time when Tucker was incarcerated.  As noted earlier, defense counsel obtained a stipulation from the Government establishing that Tucker was not in New York in 2004 when Matthew claimed to have met him. And Tucker's counsel used this stipulation in his repeated attacks on Matthew's credibility throughout his summation.[99] Accordingly, Tucker's claim of counsel error in this respect is without merit and, hence, dismissed.

### 3.    LeBow's Alleged Drug Usage

The above ineffective assistance claims fail because they meet neither the performance prong and/or the prejudice prong articulated by the Supreme Court in *Strickland*.  Tucker's allegations that LeBow was under the influence of drugs during his trial do not independently support vacating Tucker's conviction because counsel's mental incapacity, including drug addiction, is not a *per se* Sixth Amendment violation.  Rather, as every court to address this issue has held – and the Second Circuit has strongly suggested – *Strickland* still applies.[100]   In other

---

[99]    *See, e.g., id.* at 972 ("Ken Matthew . . . put his hand on the Bible and . . . he swore to God in front of you, [stating] I was introduced to that man in New York City in the summer of 200[4].  . . . We know, you know beyond any doubt that that's not true.  It never happened.  It could not have happened, because that man was not in New York City . . . when he said that happened.").

[100]    *See Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) (stating, in dictum, that "drug use alone does not establish ineffectiveness") (citing *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985)); *Frye v. Lee*, 235 F.3d 897, 907 (4th Cir. 2000) (applying *Strickland* where the attorney had allegedly abused alcohol);

words, even where it is established or assumed that trial counsel had an ongoing

substance abuse problem, the petitioner must still demonstrate that: (1) counsel's

performance fell below an "objective standard of reasonableness" under

"prevailing professional norms," and (2) "affirmatively prove prejudice" from the

alleged dereliction in counsel's performance.[101]

        Tucker cannot show that any prejudice resulted from LeBow's alleged

drug use because Goltzer, sitting as second chair, ably represented Tucker

throughout the trial and thereafter.  Indeed, in discussing Tucker's second motion

to vacate his conviction based on ineffective assistance of counsel, I expressed

skepticism over whether Tucker would be able to establish prejudice from any

alleged ineffectiveness on the part of LeBow given Goltzer's capable

representation.[102]   Indeed, out of the twelve Government witnesses, Goltzer

_Burnett v. Collins_, 982 F.2d 922, 930 (5th Cir. 1993) (same); _Smith v. Ylst_, 826 F.2d 872, 875-76 (9th Cir. 1987) (applying Strickland where the attorney had allegedly suffered from mental incapacity).

    [101]    _Strickland_, 466 U.S. at 687-88, 693-94.

    [102]    _See, e.g.,_ Ex. E to the Gov't Mem. at 2-3 ("I have to say the substance of the motion is somewhat confusing to me, too, because the claim was that Mr. LeBow was ineffective . . . but [Tucker] had Mr. Goltzer throughout and [he] clearly was not [in]effective."); at 4 (where I stated that Goltzer "kind of took over a lot of the trial. I remember that.  And the transcript will reflect. . . . I remember Goltzer did a lot."); and at 5 (describing Goltzer as "fully competent counsel" who was "there throughout, the beginning to the end, and, in fact, did much of the trial work").

cross-examined eight while LeBow cross-examined three (one uncontroversial law

enforcement witness was not cross-examined at all).  Goltzer cross-examined

several of the Government's key witnesses, including Nathaniel Jones and Curry,

the cooperating witnesses, and Detective Grant.  Goltzer also gave an impassioned

closing argument on Tucker's behalf.  Thus, even if LeBow used drugs during

Tucker's trial, that fact did not prejudice Tucker given the competent

representation he received from Goltzer.

## IV.   CONCLUSION

In sum, Tucker's ineffective assistance of counsel claims are denied

because he received objectively reasonable representation and has not suffered any

prejudice from counsel's alleged errors.  Tucker's other claims – insufficiency of

the evidence and prosecutorial misconduct  – are procedurally barred from review

by this Court as Tucker could have, but failed to, raise these arguments on direct

appeal.  Accordingly, Tucker's section 2255 motion is dismissed in its entirety.

The final issue is whether to grant a Certificate of Appealability

("COA").  For a COA to issue, a petitioner must make a "substantial showing of

the denial of a constitutional right."[103]  A "substantial showing" does not require a

petitioner to demonstrate that he would prevail on the merits, but merely that

---

[103]     28 U.S.C. § 2253(c)(2).

"reasonable jurists could debate whether . . .the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[104]  Petitioner has made no such showing.  I therefore decline to issue a COA.

Accordingly, the Clerk of the Court is directed to close Tucker's section 2255 motion in civil case number 11 Civ. 6469 (Docket Entry #1) and criminal case number 05 CR 711 (unnumbered entry on 9/9/11).  The Clerk of the Court is further directed to close civil case number 11 Civ. 6469.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              September 24, 2012

---

[104]     *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle,* 463 U.S. 880, 893 and n.4 (1983) (quotation marks and citations omitted)). *Accord Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,* 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

**- Appearances -**

**Petitioner (Pro Se):**

Von Tucker
# 57924-054
U.S.P. Big Sandy
P.O. Box 2068
Inez, KY 41224

**For Respondent:**

Rahul Mukhi
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1581